**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

BRANDON DARNELL MOORE,               :

     Petitioner,               :

                              CIVIL ACTION NO. 21-0334-CG-MU

                              :

vs.                               CRIMINAL NO. 18-00252-CG

                              :

UNITED STATES OF AMERICA,

                              :

     Respondent.

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner Brandon Darnell Moore's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 97) and the response of the United States (Doc. 99).[1] This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Upon a consideration of all relevant pleadings in this case, it is recommended that Moore's § 2255 motion be **DENIED** without an evidentiary hearing because "'it plainly appears from the face of the motion and [the] annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States,* 292 F.3d 1302, 1303 (11th Cir. 2002) (citation omitted); *see also Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) ("It is well-settled that the district court is not required to grant an evidentiary hearing when

---

[1]    Petitioner was invited to file a reply to the government's response not later than October 27, 2021. (Doc. 98). To date, Moore has not filed a reply to the government's response. (*See* Docket Sheet).

the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence."), *cert. denied,* 577 U.S. 959, 136 S.Ct. 429, 193 L.Ed.2d 320 (2015).

## FINDINGS OF FACT

On August 30, 2018, Moore was indicted on one count of conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (actual), in violation of 21 U.S.C. § 846; two counts of possession with intent to distribute more than 50 grams of methamphetamine (actual)—Count 2 charging possession of about 229 grams of methamphetamine (actual) and Count 3 charging possession of 393 grams of methamphetamine (actual)—in violation of  21 U.S.C. § 841(a)(1); and one count of possession with intent to distribute approximately 26 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1, PageID. 1-3).[2] Through the indictment, specifically

---

[2]     The Indictment charged co-defendant Kayla Simone Williams with the same crimes, except for Count 2. (*See id.*). Only Moore is named in Count 2 (*see id.,* PageID. 2), which focuses on Moore's conduct on May 16, 2018. (*See id.*). The Presentence Investigation Report sets forth (in brief) the facts underlying Count 2. (Doc. 70, PageID. 225).

6.     Investigation revealed that during May 2018, the MPDNU made several controlled buys of small amounts of methamphetamine from **Brandon Moore.** They also received information that **Moore** obtained his methamphetamine from a source in Atlanta, Georgia. The MPDNU received additional information on when **Moore** would be returning from Atlanta with a re-stock of methamphetamine to sell.

7.     On May 16, 2018, officers conducted surveillance on Interstate 65 based on the information and observed **Moore** exceeding the speed limit and made a traffic stop. After officers approached **Moore's** vehicle and obtained his driver['s] license, **Moore** fled in the vehicle and led officers on a high-speed chase.

(Continued)

Counts 1-3, Moore was advised that due to the quantity of methamphetamine (actual) attributable to him, he was subject to the penalty provisions set forth in 21 U.S.C. § 841(b)(1)(A).[3] (Doc. 1, PageID. 1-2).

On November 21, 2018, Moore entered a counseled guilty plea to conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (*see* Docs. 29 & 93), pursuant to a plea agreement (Doc. 28). As relevant here, the plea agreement included a provision incorporating by reference the Factual Resume, with Moore agreeing that the Factual Resume was true and correct. (Doc. 28, PageID. 85). Through the plea agreement, Moore confirmed that he understood the rights he was waiving by entering a plea of guilty (that is, the right to plead not guilty, to have a trial by an impartial jury, to confront and cross-examine witnesses and to call witnesses in his defense, and to not be compelled to incriminate himself) (*id.,* PageID. 72), that he had discussed the facts of his case with his attorney, that his attorney had explained the essential legal elements of the charge with him and her understanding of the United

_____

**Moore** drove in the opposite direction on Interstate 65 during the chase. Officers saw items being thrown out of the window of **Moore's** vehicle during the chase.

8.     **Moore** eventually came to a stop and fled on foot. Officers later recovered approximately 219.54 grams of methamphetamine in the roadway in the path where **Moore** fled. **Moore** possessed the methamphetamine with the intent to distribute it.

(*Id.*).

[3]     21 U.S.C. § 841(b)(1)(A)(viii) provides (and provided at the time of Moore's indictment) that in the case of a violation of subsection (a) of this section—subsection (a) making it unlawful for any person, among other things, to knowingly or intentionally possess with intent to distribute a controlled substance—involving 50 grams or more of methamphetamine, such person shall be "sentenced to a term of imprisonment which may not be less than 10 years or more than life[.]" *Id.*

States' evidence and the law as it related to the facts of his case, and that he was satisfied with his attorney's "faithful[], skillful[], and diligent[]" representation. (*Id.,* PageID. 73). The plea agreement also confirmed that Moore had not been coerced into entering a guilty plea. (*See id.,* PageID. 74).

With respect to penalties and sentencing, the plea agreement explained that the statutory minimum penalty Moore faced was ten-years' imprisonment (with the statutory maximum being life imprisonment), that the Court would impose sentence and that the United States Sentencing Guidelines are advisory and do not bind the Court. (*See id.,* PageID. 75; *see also id.,* PageID. 76, ¶ 14, ("The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.")).[4]  Indeed, the agreement makes clear that Moore "reviewed the application of the Guidelines with his attorney and underst[ood] that no one can predict with certainty what the sentencing range will be in the case" until after the pre-sentence investigation was completed and the Court had ruled on the results of that investigation. (*Id.,* PageID. 75). The written agreement immediately thereafter emphasized Moore's understanding that he would "not be

---

[4]     "The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background." (Doc. 28, PageID. 76, ¶ 15).

allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range." (*Id.*).[5]

The plea agreement also contained a Limited Waiver of Right to Appeal and Waiver of Collateral Attack, Moore acknowledging that he would not file a direct appeal or collaterally attack his conviction and sentence, except that he could raise on direct appeal that the sentence imposed was in excess of the statutory maximum or that the sentence constituted an upward departure from the advisory guideline range and, further, he could claim ineffective assistance of counsel in a direct appeal or a § 2255 motion to vacate. (Doc. 28, PageID. 83).

Moore executed the plea agreement on November 20, 2018, specifically acknowledging the following: "I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume,[6] incorporated herein, is true and accurate in every respect, and that

---

[5]     As set out in the agreement, the obligations of the Government were that it would not bring any additional charges against Moore related to the facts underlying the Indictment, that it would dismiss any remaining charges against Moore once sentence was imposed by the Court, and (importantly) that it would recommend to the Court that Moore be sentenced "at the low end of the advisory sentencing guideline range per count of conviction as determined by the Court." (*Id.,* PageID. 77).

[6]     The Factual Resume reads, in relevant measure, as follows:

During May 2018 the Mobile Police Department Narcotics Unit (MPDNU) made several controlled buys of small amounts of methamphetamine from the defendant and they received information that the defendant obtained his methamphetamine from a source in Atlanta, Georgia. The MPDNU next received

(Continued)

had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt." (Doc. 28, PageID. 85 (footnote added)).

During the course of his guilty plea proceeding on November 21, 2018, the Court asked Moore whether he had discussed the Indictment and the case in general with his attorney, whether he understood the charges pending against him, whether he was satisfied with his attorney's advice, representation, and counsel, whether he had

_____

information on when the defendant would be returning from Atlanta with a re-stock of methamphetamine to sell.

On May 16, 2018, officers conducted surveillance on [] Interstate 65 based on the information and observed the defendant exceeding the speed limit and made a traffic stop. After officers approached the defendant's vehicle and obtained his driver's license, the defendant fled in the vehicle and led officers on a high-speed chase. The defendant drove in the opposite direction on I-65 during the chase. Officers saw items being thrown out of the window of the defendant's vehicle during the chase.

The defendant eventually came to a stop and fled on foot. Officers later recovered approximately 219.54 grams of methamphetamine (actual) in the roadway in the path where the defendant fled. The defendant possessed the methamphetamine with the intent to distribute it.

On May 17, 2018[,] the defendant was captured on a recorded telephone call at the Mobile Metro Jail instructing the co-defendant[,] Kayla Simone Williams, to get a black bag and a purple bag out of another one of his cars and secure it. The defendant told Williams to break the vehicle window if necessary to get into the vehicle. The defendant and Williams continued to talk in code about getting the drugs out of the car without mentioning drugs. They referred to the drugs as clothes and in one exchange the defendant repeatedly asks Williams if she got the clothes, and she responds: "I got the clothes but not the clothes-clothes." The defendant told Williams to get both bags out of the car. Williams later confirmed on a telephone call that she got it out and her grandmother put it up. Officers immediately obtained a search warrant for Williams' grandmother's house and recovered several weapons and methamphetamine and marijuana from a black [bag] and [a] purple bag in the house. The United States and the defendant are awaiting receipt of laboratory reports for the weight of these drugs and both parties agree to whatever amount that will be set forth in the laboratory reports for purposes of further relevant conduct.

(Doc. 28, PageID. 88-89).

reviewed the plea agreement and factual resume with his attorney before he signed

them, and whether he understood the terms of his plea agreement; as to each of these

inquiries, Moore replied in the affirmative. (*See* Doc. 93, PageID. 308-10). He confirmed

that no one had made any promises or assurances of any kind that were not written

down in his plea agreement to get him to plead guilty and specifically informed the Court

that no one had threatened him or in any way forced him to plead guilty. (*See id.,*

PageID. 309-11). Moore also acknowledged his understanding that he could not change

his plea back to not guilty simply because he did not like the sentence he received. (*See*

*id.,* PageID. 310). The Court then informed Moore of the following:

> Mr. Moore, the maximum penalty the Court could impose upon this
> case is a 10-year mandatory minimum term of imprisonment, up to life
> imprisonment[.]

(*Id.,* PageID. 312). Moore expressly stated he understood the statutory mandatory

minimum and maximum terms of imprisonment he was facing (*see id.*) and, as well,

acknowledged his understanding that no one, including his attorney and the Court,

could know exactly what the advisory sentencing guidelines would require in his case

until the presentence report was completed (*see id.,* PageID. 313) and that ultimately

any estimate given by his attorney could still be wrong given that the sentence is

ultimately for the judge to determine (*see id.,* PageID. 313-14). Moore acknowledged all

constitutional rights he was waiving by entering a plea of guilty as well as the appeal

waiver. (*See id.,* PageID. 314-15).

> THE COURT:  All right. Mr. Moore, in your case you are pleading
> guilty to a charge of violating Title 21, United States Code, Section 846. In
> order to convict you of that offense, the government would have to prove
> that two or more persons came to a mutual understanding to distribute

methamphetamine or to possess that substance with the intent to distribute it and that you, knowingly and willfully became a member of the conspiracy.  Do you understand what the government would have to prove in order to convict you?

DEFENDANT MOORE:  Yes, ma'am.

.      .      .

THE COURT:  All right. Now, I asked each of you before if you had signed the factual resume attached to the plea agreement. You said you had. I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in support of your guilty plea. Do you understand and agree to that?

DEFENDANT MOORE:  Yes, ma'am.

.      .      .

THE COURT:  All right. Well, I have read those. So, I'll now ask each of you how do you plead to the charge, guilty or not guilty?

DEFENDANT MOORE:  Guilty.

.      .      .

THE COURT:  All right. It is the finding of the Court in the case of the United States versus Brandon Darnell Moore . . . that [the] defendant is fully competent and capable of entering an informed plea, [the] defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea[] [is] therefore accepted and [the] defendant is now adjudged guilty of that offense.

(*Id.,* PageID. 316-17).[7]

---

[7]     Moore specifically acknowledged his understanding that before he was sentenced, the probation office would be preparing a presentence report for which he would be interviewed and that during such interview his lawyer could be present if he so desired. (*See id.,* PageID. 317).

The pre-sentence investigation report ("PSR") determined that Moore was accountable for 20.9 grams of marijuana, 8.819 grams of methamphetamine (actual), and 214.62 grams of methamphetamine "ice." (Doc . 70, PageID. 226). The PSR reflects a base offense level of 32 because the total amount of converted drug weight [methamphetamine (actual), marijuana, and methamphetamine "ice"] for which Moore was held responsible involved more than 3,000 kilograms but less than 10,000 kilograms of marijuana. (*See id.*). Once adjustments were made to Moore's base offense level of 32, both upward adjustments (+4 total) and downward adjustments (-3 total), his total offense level was determined to be a 33. (*Id.,* PageID. 227; *compare id. with id.,* PageID. 226-27).  Based on a total offense level of 33 and a criminal history category of II (*id.*, PageID. 228), the guideline range of imprisonment was determined to be 151 to 188 months (*id.,* PageID. 232).

One day prior to sentencing, on May 28, 2019, Moore's trial attorney and assistant federal public defender, Latisha Colvin, filed several character letters in support of a lenient sentence (Doc. 73), penned by Moore's mother, a high school assistant principal, and several family friends, all of whom characterized the charged conduct as inconsistent with Moore's character (*see* Doc. 73-1, PageID. 243-48).

At sentencing, on May 29, 2019, there was no objection to the Court's findings, based on the PSR, of a total offense level of 33 and a criminal history category of II (Doc. 91, PageID. 294), and, consequently, the advisory guidelines range as determined in the PSR (*compare id. with* Doc. 70, PageID. 232). Thereafter, defense counsel called the Court's attention to the multiple letters of support and the family

members and friends in court supporting Moore (Doc. 91, PageID. 294); underscored his young age, his acceptance of responsibility for his actions, and his efforts to obtain an education, being just one semester shy of graduating from college (*see id.,* PageID. 295 & 296); and suggested that he got involved with drugs after losing his way following the premature death of his father (*id.,* PageID. 295). Counsel argued that based upon these circumstances, the court should sentence Moore to the statutory mandatory minimum of ten (10) years imprisonment as opposed to the "higher" guidelines range. (*See id.,* PageID. 295-96). Moore also made a statement (*see id.,* PageID. 296 & 297 ("I just want to say to my family I'm sorry. . . . I made a terrible decision. . . . Like, I didn't have this to do at all. And I just want to ask y'all for mercy, please, because as long as I'm incarcerated, my family is incarcerated.")) and the government pressed its case for a low-end guidelines sentence (*see id.,* PageID. 297). After hearing all arguments and reading all information supplied,  the Court determined that a low-end guidelines sentence was appropriate given that Moore had ventured off what all appearances suggested was a rosy course (buoyed by a strong support system) and was not only selling methamphetamine but, as well, made a trip to Atlanta to re-up his supply of methamphetamine and, when a traffic stop was attempted, led police on a high speed chase, including driving on the wrong side of the interstate, and, additionally, that when he was in jail he instructed another person to hide some things for him, including firearms and drugs. (*Id,* PageID. 298). The Court sentenced Moore to a 151-month term of imprisonment (*id.,* PageID. 299 & 300; *see also id.,* PageID. 300 ("I find the guideline range is appropriate to the facts and circumstances of this case and provides for a

reasonable sentence given the statutory purposes of sentencing. The sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation. I do sentence at the low end based upon your attempt to cooperate in this case.")), followed by five years of supervised release (*id.,* PageID. 299 ("While on supervised release, the defendant shall not commit any federal, state, or local crimes; he shall be prohibited from possessing a firearm or other dangerous device; and shall not possess a controlled substance. In addition, ***the defendant shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and that are on record with this court***. The Court orders that the defendant also comply with the following special conditions of supervised release: First is urine surveillance; second is drug and/or alcohol treatment; and third is the model search condition." (emphasis supplied))).

Upon completing his term of imprisonment, Moore will be subject to the standard conditions of supervised release set out in the judgment. (*Compare id. with* Doc. 74, PageID. 252 (judgment in criminal case signed on June 10, 2019, but imposed on May 29, 2019, and setting out standard conditions of supervision on page 4)). Condition seven (7) will require that Moore "refrain from excessive use of alcohol" (*id.*); condition eight (8) will require that he refrain from frequenting "places where controlled substances are illegally sold, used, distributed, or administered[]" (*id.*); condition nine (9) will require that Moore refrain from associating "with any persons engaged in criminal activity" and with any "person convicted of a felony unless granted permission to do so

11

by the probation officer[]" (*id.*); condition ten (10) will require that he "permit a probation officer to visit him . . . at any time at home or elsewhere" (*id.*); and condition thirteen (13) will require that "as directed by the probation officer," he "shall notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm [his] compliance with such notification requirement." (*Id.*).

Moore entered written notice of appeal on August 23, 2019 (Doc. 77) and, on September 17, 2019, on motion of Moore (*see* Doc. 85), appellate counsel was appointed (Doc. 86). Appellate counsel challenged "the procedural and substantive reasonableness" of Moore's sentence in his brief on appeal. (*See* Doc. 95, PageID. 327). The government moved to dismiss Moore's appeal on the basis that his sentencing claim was barred by his valid (that is, knowing and voluntary) sentence-appeal waiver in his plea agreement. (*See id.,* PageID. 331). On March 12, 2020, a three-judge panel of the Eleventh Circuit entered a per curiam opinion dismissing Moore's appeal "based on the valid and enforceable sentence-appeal waiver provision in his plea agreement." (*Id.,* PageID. 327; *see also id.,* PageID. 331-334). Moore's judgment on appeal became final when his time to seek Supreme Court review of the Eleventh Circuit's decision expired, *see Clay v. United States,* 537 U.S. 522, 532, 123 S.Ct. 1072, 1079, 155 L.Ed.2d 88 (2003), which deadline, because of the effects of COVID-19, was extended to August 9, 2020 (*see* Doc. 97-1, PageID. 362-63). Moore did not file a petition for certiorari review in the United States Supreme Court therefore his judgment because final on August 9, 2020.

On July 26, 2021, Moore timely filed his motion to vacate in this Court (Doc. 97),

claiming that his trial attorney provided ineffective assistance during the plea-bargaining

stage of his proceedings because she allowed him to plead guilty to a conspiracy

charge without awaiting lab results respecting Count III, which ultimately showed that

there were only 8.9 grams of methamphetamine (actual). (*See* Doc. 97-1, PageID. 351-

52).[8] In addition, Moore contends that his attorney was constitutionally ineffective at

sentencing due to her failure to request a downward departure (*see id.,* PageID. 352-

53)[9] and due to her failure to object to various conditions of release to which he will be

subjected after he completes his term of imprisonment (*see id.,* PageID. 353-58).[10] For

---

[8]    Moore argues that this amount of methamphetamine was not of a quantity to trigger a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) and that had he known Count III entailed only 8.9 of actual methamphetamine "he would not have pleaded guilty to Count 1 because he and Ms. Kayla Simone Williams were never in any agreement to distribute methamphetamine (actual) as alleged in Count 1 of the indictment." (*Id.,* PageID. 252). He alternatively suggests prejudice by arguing that he "would not have plead guilty to Count 1 but would have plead guilty to Count 3 . . . or insisted o[n] going to trial on Count 1." (*Id.*).

[9]    Moore opines that his attorney should have argued for a downward variance from the low end of the guidelines by citing to various cases which have highlighted policy disagreement with the methamphetamine guidelines (i.e., sentencing disparity). (*See id.,* PageID. 353). "Had she objected[,] the outcome of the proceedings ***may*** have been different in that Petitioner could have received a sentence less than the sentence he received." (*Id.*) (emphasis supplied).

[10]    Moore stakes the position that Release Condition 7, which instructs the releasee to refrain from "excessive" us of alcohol, is an overly vague condition and that had it not been for counsel's deficient performance, he would not be subject to a condition that may prohibit lawful conduct and leaves him exposed to an arbitrary and indefinite restriction on his liberty (*id.,* PageID. 354); that Release Condition 9, forbidding him from associating "with any persons engaged in criminal activity and shall not associate with any person convicted of a felony," contains no scienter requirement ("knowingly") and had counsel added such a requirement he would not be subject to collateral consequences associated therewith (*id.,* PageID. 354-55); that Release Condition 8, which prohibits him from "frequent[ing] places where controlled substances are sold, used, and distributed" does not contain a scienter requirement and that had counsel moved to add this requirement, he would not be subject to collateral consequences accompanying a violation of this condition (*id.,* PageID. 555-56); that Release Condition 10, (Continued)

its part, the government contends that the record conclusively demonstrates that Moore

was not denied his right to counsel at his change of plea hearing or at sentencing;

therefore, the government urges this Court to deny Moore's § 2255 motion without

conducting a hearing. (*See* Doc. 99, PageID. 381-91). The undersigned agrees with the

government and finds that Moore's § 2255 motion should be denied without a hearing

because the record establishes that his trial attorney was not constitutionally deficient.

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under

sentence of a court established by Act of Congress claiming the right to be released

upon the ground that the sentence was imposed in violation of the Constitution or laws

of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack, may move the court which imposed the sentence to vacate,

set aside or correct the sentence." 28 U.S.C. § 2255(a). Thus, as the language of §

2255(a) makes clear, "the grounds for collateral attack on a final judgment . . . are

limited[,]" *Gayle v. United States,* 2020 WL 4339359, *3 (S.D. Fla. July 28, 2020) and

---

allowing the probation officer to visit him at any time, impinges on his liberty and should have
been objected to by counsel and because of this failure he was prejudiced since this condition
could have been tailored to confine visits to "reasonable locations" between "specified hours,"
(*id.,* PageID. 356; *see also id.,* PageID. 357 ("By not moving for identical language for Condition
10[,] the trial attorney has exposed Petitioner to a draconian and overly restrictive condition that
he would otherwise not be tethered to.")); that Release Condition 13, requiring him to notify
"third parties of risks that may be occasioned by the criminal record or personal history or
characteristics," contains numerous ambiguities, as there is no indication of the meaning of
"personal history" and "characteristics" or what "risks" need be disclosed to which "third
parties[,]" and had counsel objected to this condition on these bases Petitioner would not be
subject to being unguided by a vague condition (*see id.,* PageID. 357-58).

are "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir.) (citations and internal quotation marks omitted), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004). Petitioner's sole contention is that constitutionally ineffective assistance of trial counsel entitles him to the relief afforded by 28 U.S.C. § 2255. (*See* Doc. 97).

**A.     Did Moore's Trial Attorney Provide Constitutionally Ineffective Assistance?** To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the

15

'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[11]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[12] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's

---

[11]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[12]    To satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

**1.      Trial Counsel's Performance During the Plea-Bargaining Process**.

Moore contends that his trial attorney provided ineffective assistance during the plea-bargaining stage of his proceedings because she allowed him to plead guilty to a conspiracy charge without awaiting lab results respecting Count III, which ultimately

showed that there were only 8.9 grams of methamphetamine (actual). (*See* Doc. 97-1, PageID. 351-52). Moore argues that this amount of methamphetamine was not of a quantity to trigger a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) and that had he known Count III entailed only 8.9 of actual methamphetamine "he would not have plead guilty to Count 1 because he and Ms. Kayla Simone Williams were never in any agreement to distribute methamphetamine (actual) as alleged in Count 1 of the indictment." (*Id.,* PageID. 252). He alternatively suggests prejudice by arguing that he "would not have plead guilty to Count 1 but would have plead guilty to Count 3 . . . or insisted o[n] going to trial on Count 1." (*Id.*).

Moore's claim in this regard is not well-taken. Petitioner's attorney, Latisha Colvin, was not deficient in relaying the Government's formal plea offer involving the conspiracy charge (Count 1) to Moore and advising that he accept the offer; indeed, she had "the duty to communicate [this] formal [plea] offer[] from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye,* 566 U.S. 134, 145, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). Moore, who is college-educated, chose, in consultation with his attorney, to plead guilty to the conspiracy count pursuant to the plea agreement set forth above.[13] Given his solemn

_____

[13] Moore's signature on the plea agreement and his statements in open court during the change-of-plea proceeding sufficiently establish that his agreement to plead guilty to the conspiracy charge was knowing and willing. Indeed, Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity[,]" *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), and should be "afforded great weight." *Martin v. United States,* 949 F.3d 662, 670 (11th Cir), *cert. denied,* ___ U.S. ___, 141 S.Ct. 357, 208 L.Ed.2d 87 (2020).

(Continued)

statements in open court in pleading guilty to the conspiracy count, Moore's conclusory and contrary suggestion in his § 2255 motion that he was never in agreement with his co-defendant, Kayla Williams, to distribute methamphetamine is unavailing, particularly because Williams herself pled guilty to the conspiracy count, *see United States v. Moore,* 18-cr-00252-CG-MU-2, Doc. 43 (on January 16, 2019, Williams entered a counseled guilty plea to Count 1, charging the offense of Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 846). It also bears noting that nothing in the record would begin to suggest that the Government had any interest in offering a plea deal to Moore that did not include the conspiracy count. *See generally Cook v. United States,* 613 Fed.Appx. 860, 865 (11th Cir. June 3, 2015) (recognizing that the government must be willing to offer a particular plea deal), *cert. denied,* 577 U.S. 1161, 136 S.Ct. 1214, 194 L.Ed.2d 216 (2016). In trying to focus this Court's attention on the 8.9 grams of methamphetamine (actual) attributable to him in Count 3, Moore ignores the 214.62 grams of methamphetamine ice attributable to him under Count 2, the methamphetamine collected after Moore led police a high-speed car chase and which he tried to dispose of after coming to a stop in his car and fleeing on foot. All the methamphetamine referenced in Counts 2 and 3 (as well as the marijuana in Count 4) is attributable to Moore, as his attorney (and the college-educated

---

Moore also signed the Factual Resume (Doc. 28, PageID. 89), which specifically recognized that the parties were "awaiting receipt of laboratory reports for the weight [of] the[] drugs" obtained from a search of Williams' grandmother's house (recovered from a black bag and a purple bar in the house) and would "agree to whatever amount that will be set forth in the laboratory reports for purposes of further relevant conduct." (*Id.*). The parties, of course, already knew that well over 50 grams of methamphetamine "ice" was attributable to Moore as it relates to Count 2. (*Compare id. with, e.g.,* Doc. 70, PageID. 226).

Petitioner) well understood, in calculating his total offense level at sentencing. Accordingly, based upon these circumstances, including that Moore has offered no factual basis for his assertion/assumption that the Government would have offered him a plea deal directed solely to Count 3, *see Cook, supra,*[14] this Court cannot find that trial counsel was deficient in allowing him to plead guilty to a conspiracy charge without awaiting lab results respecting Count 3.

Petitioner has also not established the prejudice prong of the *Hill/Strickland* standard. First, as stated, Moore's conclusory suggestion that he and Williams never entered an agreement to distribute methamphetamine is contraindicated not only by his own guilty plea but, as well, by Ms. Williams' plea of guilty to the conspiracy charge in Count 1 of the Indictment. Moore additionally argues that but for the deficient performance by his attorney, he would have pleaded guilty to Count 3 or would have insisted on going to trial on Count 1. Petitioner's "Count 3" prejudice argument founders because there is absolutely nothing in the record to even begin to suggest that the Government would have offered him a plea deal to Count 3,[15] *compare Cook, supra*

---

[14]   This is particularly true given that the Government had overwhelming evidence linking Moore to the 214.62 grams of methamphetamine ice referenced in Count 2 of the Indictment.

[15]   Besides, even engaging in Moore's suggestion that a plea deal to Count 3 was possible, still he cannot establish prejudice because he has offered nothing demonstrating that his sentence exposure would have been different had he pled solely to Count 3. This is so because the Court would have considered all relevant conduct in the case and Moore would have been held accountable not only for the 8.819 grams of methamphetamine (actual) related to Count 3 but, as well, the 214.62 grams of methamphetamine ice related to Count 2 and the 20.9 grams of marijuana related to Count 4. *See* U.S.S.G. §1B1.3(a)(1) (defining relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid
(Continued)

*with Rosin v. United States,* 786 F.3d 873, 879 (11th Cir.) (recognizing that a Petitioner's "conclusory after-the-fact assertion" that he would have accepted a different plea agreement, without more, is insufficient to establish prejudice), *cert. denied,* 577 U.S. 959, 136 S.Ct. 429, 193 L.Ed.2d 320 (2015), and, indeed, the undersigned can safely state/find that such a deal would never have been in the offing given the overwhelming evidence of Moore's guilt with respect to (in particular) Count 2. Furthermore, Moore's suggestion that he would have insisted on going to trial on Count 1 is specious on its face since a decision to plead not guilty would have meant not only a trial on Count 1 but, as well, a trial on all counts. And given, again, the overwhelming evidence of Moore's guilt of Count 2 of the Indictment (inclusive of testimony from police officers that Moore led them on a high-speed chase on the Interstate, with Moore traveling on the wrong side for some period of time while throwing items out of his vehicle, and then finding 219.54 grams of methamphetamine in the roadway in the path Moore took once his vehicle came to a rest and he attempted to flee on foot), this Court would have been in almost the same sentencing position as it was in for the guilty plea, except that Moore would be given no adjustments for acceptance of responsibility and

---

detection or responsibility for that offense"). Thus, no matter the offense to which Moore would have pled guilty, there was no getting around a base offense level of 32 because of the total amount of converted drug weight [methamphetamine (actual), marijuana, and methamphetamine "ice"] for which Moore was held responsible involved more than 3,000 kilograms but less than 10,000 kilograms of marijuana (*see* Doc.70, PageID. 226) or a total offense level of 33 following consideration of all upward and downward adjustments (*see id.,* PageID. 226-27).

this would have increased his sentence exposure.[16]   Therefore, because it is not believable that Moore would have insisted on going to trial in this case, he has failed to demonstrate the prejudice prong of the *Hill/Strickland* standard.

**2.**    **Trial Counsel's Performance as it Relates to Sentencing**.

**a.**    **Downward Departure.**  Moore claims that his trial attorney provided constitutionally ineffective assistance during the sentencing hearing because she failed to request a downward departure from the low-end of the sentencing guidelines by highlighting policy disagreements some district courts have expressed with the methamphetamine guidelines because (in those courts' opinions) sentence lengths are inordinately driven by the quantity and purity of the methamphetamine involved in the offense, with these courts finding quantity and purity unreliable proxies for the offender's role in the crime and his culpability. (*See* Doc. 97-1, PageID. 353, citing, e.g., *United States v. Johnson,* 379 F.Supp.2d 1213 (M.D. Ala. 2019)).

The undersigned would be remiss in failing to note at the outset that Moore's attorney did, in fact, request the Court to downwardly depart from the low-end of the guidelines (the low end being 151 months) to the statutory minimum mandatory of 120 months based upon the Petitioner's individual characteristics. (*See* Doc. 91, PageID. 294-96). In making this argument, defense counsel relied not only the numerous character letters submitted to the Court (*see* Doc. 73-1, PageID. 243-48) but, as well, her own arguments focusing on Moore's acceptance of responsibility, potential for the

---

[16]    A guilty verdict following trial would have resulted in a total offense level of 36 (at a minimum) and an advisory Guidelines range of 210-262 months, with the Government being under no obligation to recommend a low-end Guidelines sentence.

future (with his education and family support), and how he lost his way (temporarily) after the sudden and untimely death of his father (*see* Doc. 91, PageID. 294-96). In other words, counsel chose to base a downward departure request on Moore's individual characteristics, the more typical request, as opposed to policy disagreements some courts have expressed regarding the methamphetamine guidelines. *See United States v. Trejo,* 624 Fed.Appx. 709, 711 & 713-14 (11th Cir. Aug. 24, 2015) (recognizing that district courts have the discretion and authority to vary downward based on individual circumstances/characteristics, the more typical request, and on policy disagreements with the methamphetamine guidelines).

   The undersigned has no basis to find that trial counsel was deficient in focusing on Moore's individual characteristics and circumstances (including his potential), as opposed to policy disagreements over methamphetamine guidelines (which would have focused the Court's attention on the types and quantity of methamphetamine involved in Moore's offenses), since that decision was both objectively reasonable and reasonably strategic. *Compare Pair, supra,* 373 Fed.Appx. at 982 (recognizing that a petitioner fails to overcome the strong presumption that the attorney's conduct was objectively reasonable where the challenged conduct might be considered sound strategy) *with Gordon v. United States,* 518 F.3d 1291, 1300 (11th Cir. 2008) (recognizing that there may be strategic reasons not to object to a plain error). Indeed, Moore makes no argument (nor can he) that "no competent counsel would have taken the action that his counsel did take[,]" *Hall, supra,* 611 F.3d at 1290, in arguing for a downward departure based on her client's individual characteristics as opposed to policy disagreements over

24

the methamphetamine guidelines. Therefore, trial counsel's performance in this regard was not constitutionally inadequate/deficient.[17]

    **b.**   **Conditions of Release.**   Moore's final argument is that his trial attorney was constitutionally deficient in failing to object to certain standard conditions of supervised release to which he will be subject after he has completed his term of imprisonment, specifically Standard Conditions of Release 7, 8, 9, 10, and 13, and also argues (in a conclusory manner) that the result of his sentencing proceeding would

---

[17]    Moore also has not shown that a reasonable probability exists that had his attorney highlighted other courts' policy disagreements with the methamphetamine guidelines that the result of his sentencing proceeding would have been different (that is, he has not established prejudice). Indeed, Moore's own motion betrays him in this regard as he simply argues that had counsel made a request for downward departure based on these policy disagreements that "the outcome of the proceedings **may** have been different in that Petitioner **could** have received a sentence less than the sentence he received." (Doc. 97-1, PageID. 353). "May" and "could" simply recognize the vast discretion that district courts exercise in varying downward from the guidelines, *see Trejo, supra,* 624 Fed.Appx. at 713-14, but in no manner equate to a showing that had this argument been made to Judge Granade a reasonable probability exists that the result of his sentencing would have been different (because the district judge would have varied downward). And, indeed, Petitioner cannot make this showing because he has cited to no case in which Judge Granade, or any other Judge in this Court, has varied downward from the guidelines based upon policy disagreements with the methamphetamine guidelines. Moore merely cites to the opinions of one district judge in the Middle District of Alabama who has varied downward from the applicable guidelines range based on his policy disagreement with the methamphetamine guidelines. *See United States v. Johnson,* 379 F.Supp.3d 1213 (M.D. Ala. 2019). The one Eleventh Circuit case Moore cites to, *Trejo, supra,* again merely recognizes that district courts possess the discretion to vary downward based on a policy disagreement with the methamphetamine guidelines, 624 Fed.Appx. at 714, and found nothing contrary to (or inconsistent with) this discretion when the district judge (the same Judge who penned the *Johnson* case) stated on the record that sentencing courts "'should be more reluctant' to grant variances based on policy disagreements than variances based on individual circumstances." *Id.* at 713; *see also id.* at 714 ("The district court's comment about being more 'reluctant' to grant a variance based on a policy dispute with the Guidelines merely recognizes that a variance 'based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case,' [*Kimbrough v. United States,* 552 U.S. 85,] 109, 128 S.Ct. [558,] 575, [169 L.Ed.2d 481 (2007)], falls outside of the institutional strengths of a sentencing court."). Based upon the foregoing discussion, therefore, prejudice is lacking.

have been different had such objections been interposed. (*See* Doc. 97-1, PageID. 353-58).

"Conditions of supervised release are not vague and overbroad when they are 'undeniably related' to the sentencing factors." *United States v. Nash,* 438 F.3d 1302, 1307 (11th Cir. 2006) (citation omitted). And, here, of course, Petitioner's overarching claim is that his attorney should have objected to the above-identified five standard conditions of release as vague, though these conditions are directly "plucked" from U.S.S.G. § 5D1.3(c), "a list of '"standard" conditions' that the Guidelines 'recommend[] for supervised release.'" *United States v. Scarborough,* 827 Fed.Appx. 949, 951 (11th Cir. Sept. 15, 2020), citing and quoting U.S.S.G. § 5D1.3(c). In light of the foregoing principles and because Standard Conditions of Release 7, 8, 9, 10, and 13 have withstood vagueness/overbreadth challenges in courts across the United States (particularly the Eleventh Circuit and Ninth Circuit Courts of Appeal), *see id.* at 951-52 (finding *Nash* continues to be  good law in the Eleventh Circuit and reaffirming that Standard Condition 13 is not vague or overbroad and it does not constitute an unconstitutional delegation of authority); *United States v. Ly,* 650 Fed.Appx. 503, 507 (9th Cir. May 25, 2016) (finding Standard Conditions 7 and 8 are not unconstitutionally vague), *cert. denied,* ___ U.S. ___, 137 S.Ct. 518, 196 L.Ed.2d 422 (2016); *United States v. Clarke,* 428 Fed.Appx. 712, 713 (9th Cir. Apr. 19, 2011) (rejecting defendant's overbroad and vagueness challenge to Standard Condition 10); *United States v. King,* 608 F.3d 1122, 1128-29 (9th Cir. 2010) (finding the non-association condition, Standard Condition 9, was not unconstitutionally vague); *United States v. Lovelace,* 257

Fed.Appx. 773, 775-76 (5th Cir. Dec. 11, 2007) (also finding the non-association

condition, Standard Condition 9, was not impermissibly vague); *United States v.*

*Harmon,* 181 Fed.Appx. 922, 925-26 (11th Cir. May 25, 2006) (reaffirming the holdings

in *Nash* vis-à-vis Standard Condition 13); *Nash, supra,* 438 F.3d at 1306-07

(determining that Standard Condition 13 neither delegates a judicial function to the

defendant's probation officer, nor is it unconstitutionally vague or overbroad),[18] the

undersigned cannot find that Moore has established either that his attorney was

---

[18]    In fairness to Moore, he has cited to six Seventh Circuit cases and one case out of the Sixth Circuit which have concluded that certain standard conditions of supervised release are impermissibly vague (or overbroad), *see United States v. Hudson,* 908 F.3d 1083,1084 (7th Cir. 2018) ("Our precedent holds that a condition of supervised release prohibiting 'excessive' alcohol use, without definition, is impermissibly vague."); *United States v. Sexton,* 719 Fed.Appx. 483, 484-85 (6th Cir. Dec. 22, 2017) (finding release condition that defendant "notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics" was impermissibly vague); *United States v. Henry,* 813 F.3d 681, 683-84 (7th Cir. 2016) (delineating criticisms regarding the supervised release condition that the defendant "'permit a probation officer to visit him or her at any time at home or elsewhere and . . . permit confiscation of any contraband observed in plain view of the probation officer'"); *United States v. Armour,* 804 F.3d 859, 870 (7th Cir. 2015) (upholding standard condition 9 where it included a knowledge requirement and standard condition 10 where home visits by the probation officer were confined to the hours of 6:00 a.m. to 11:00 p.m.); *United States v. Kappes,* 782 F.3d 828, 849 (7th Cir. 2015) (finding impermissibly vague the condition forbidding the defendant from associating with any persons engaged in criminal activity and any person convicted of a felony unless granted permission to do so by the probation officer; the condition requiring that the defendant refrain from excessive use of alcohol; the condition that the defendant notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics; and the condition prohibiting the defendant from frequenting places where controlled substances are illegally sold, used, distributed or administered); *United States v. Thompson,* 777 F.3d 368, 376-77 (7th Cir. 2015) (finding impermissibly vague conditions that defendant refrain from excessive use of alcohol and that defendant should refrain from associating with any person convicted of a felony unless granted permission to do so by the probation officer); *United States v. Siegel,* 753 F.3d 705, 715-16 (7th Cir. 2014) (finding impermissibly vague condition prohibiting excessive use of alcohol); however, with no binding precedent from the Eleventh Circuit Court of Appeals, and contrary precedent from both the Ninth and Eleventh Circuits, Moore cannot demonstrate either that his trial attorney was deficient in failing to interpose objection to these standard conditions of supervised release or that the result of his sentencing would have been different.

deficient in failing to object to these standard conditions of release or that he was prejudiced by counsel's failure to object. In particular, given the standard nature of these conditions, both in terms of these conditions being recommended by the Sentencing Guidelines and the fact that they are imposed in every criminal case in this district (and probably in most district in the United States), it should come as no surprise to anyone that this Court does not find Moore's trial attorney deficient in not lodging objections to Standard Conditions 7, 8. 9, 10, or 13, given the relative dearth of cases which have raised challenges to these conditions in the first place, not to mention the fewer cases still that have raised successful challenges. In other words, given that the vast majority of federal criminal cases conclude without challenges to conditions of supervised release, Moore has not shown (nor can he demonstrate) that "no competent counsel would have taken the action that his counsel did take[,]" *Hall, supra,* 611 F.3d at 1290, in focusing on shortening her client's overall sentence as opposed to making unsupportable objections to his conditions of supervised release, *see Hubbard v. Haley,* 317 F.3d 1245, 1259 (11th Cir.) (recognizing that a defense attorney, in defending his or her client's interests, "need not urge every conceivable objection the law would provide."), *cert. denied,* 540 U.S. 951, 124 S.Ct. 390, 157 L.Ed.2d 283 (2003).[19]

---

[19]     Counsel also undoubtedly understood that Moore will be able to challenge, as necessary (and as unconstitutionally vague/broad), any of these conditions at a later date should a probation officer seek to revoke his supervised release once that term has started. This later opportunity to challenge conditions of release that Moore possesses serves to underscore the reasonableness of his attorney's actions in focusing her attention on the length of her client's term of imprisonment, not on matters that will only come to fruition after that term of imprisonment has been served.

Therefore, trial counsel's performance in this regard was not constitutionally inadequate/deficient.

In addition, Moore cannot establish prejudice because even had counsel interposed objection to these standard conditions of supervised release, the weight of authority, particularly in the Eleventh Circuit (along with the recommendation of the Guidelines to include these conditions), would have led the Court to overrule all objections. Therefore, Moore has not shown a reasonable probability exists that the outcome of his sentencing proceeding would have been different.

     **B.**    <u>**Certificate of Appealability**</u>. The Magistrate Judge recommends that the Court deny Moore's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Moore's habeas motion is being denied on the merits, such that a COA should issue only when the Petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000);

*see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Here, with respect to all of Moore's ineffective assistance of counsel claims, it is recommended that the Court find that reasonable jurists could not debate whether his § 2255 habeas petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a certificate of appealability with respect to any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL

3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that Brandon Darnell Moore's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (*see* Doc. 97) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal

for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 19th day of November, 2021.

_ s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**